# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**WILLIAM SANCHEZ ROSA**,
    Plaintiff,

v.

**COMMISSIONER OF SOCIAL
    SECURITY**,
    Defendant.

Civil No. 18-1506 (BJM)

## OPINION AND ORDER

William Sanchez Rosa ("Sanchez") seeks review of the Commissioner's decision that he is not entitled to disability benefits under the Social Security Act. Sanchez appears to ask for the decision to be reversed and for an order either awarding disability benefits or remanding the case for further proceedings. The parties consented to proceed before a magistrate judge. Dkt. 4. Sanchez filed a memorandum of law in support of his position. Dkt. 15. The Commissioner opposed. Dkt. 16. After careful review, the Commissioner's decision is **VACATED** and **REMANDED** for proceedings consistent with this opinion.

## STANDARD OF REVIEW[1]

The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The court "must affirm the [Commissioner's] resolution, even if the record arguably

---

[1] As the Commissioner notes, "recent regulatory amendments contain significant revisions on evaluating medical evidence." Dkt. 16 at 5 n.1. However, these revisions deal with claims filed on or after March 27, 2017. Since Sanchez's claim was filed on December 9, 2013, the revised statutes will not be applied.

could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987). Written reports submitted by non-examining physicians who merely reviewed the written medical evidence are not substantial evidence, although these may serve as supplementary evidence for the Commissioner to consider in conjunction with the examining physician's reports. *Irizarry-Sánchez v. Comm'r*, 253 F. Supp. 2d 216, 219 (D.P.R. 2003).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir. 1982). In step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to an impairment already determined to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. At step four, the Commissioner determines whether

the impairment prevents the claimant from performing the work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in view of his residual functional capacity ("RFC"), as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

The burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. *See Bowen*, 482 U.S. at 146–47 n.5. At steps one through four, the claimant has the burden of proving that he cannot return to his former employment because of the alleged disability. *Santiago v. Sec'y of Health & Human Servs.*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that the claimant can perform. *Ortiz v. Sec'y of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).

Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Sec'y of Health & Human Servs.*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

*Procedural History*

Sanchez was born on October 13, 1962. Transcript ("Tr.") 52. He had no formal education, and worked as a highway worker for the Puerto Rico Highway Authority between 1981 and 2010. Tr. 262. Sanchez claims a disability onset date of October 22, 2013 due to major depressive disorder. Tr. 48. On December 9, 2013, Sanchez filed an application for Social Security Disability Benefits, which was denied on February 21, 2014 and again on May 6, 2014. Tr. 43. Sanchez requested a hearing on June 4, 2014 and a video hearing was held on July 11, 2016 before Administrative Law Judge ("ALJ") Myriam C. Fernandez Rice. Tr. 43–53. Sanchez and Mary D. Anderson, a vocational expert ("VE"),

testified at the hearing. Tr. 43. In response to the ALJ's questions, the VE stated that a person with Sanchez's limitations is capable of working as a cleaner, an industrial cleaner, and a case load operator. Tr. 53. Sanchez's attorney asked the VE the maximum amount of time an employer will permit an unskilled employee who had moderate limitations to be out of work for "absenteeism, being late, or . . . [having] to leave early due to a medical condition." Tr. 72. The VE responded not more than once a month, on a consistent basis. *Id.*

On August 15, 2016, the ALJ reviewed the evidence and concluded that Sanchez was not disabled at any time from October 22, 2013 through the date of her decision. Tr. 53. At step one of her evaluation, the ALJ found that Sanchez had not "engaged in substantial gainful activity since October 22, 2013." Tr. 45. At step two, the ALJ concluded that Sanchez suffers from two severe impairments: affective disorder and anxiety disorder. Tr. 46. At step three, the ALJ found that while Sanchez suffers from these impairments, they do not meet or medically equal the severity of one of the listed impairments. Tr. 46. Next, the ALJ turned to Sanchez's RFC, which was that Sanchez could "perform a full range of work at all exertional levels but with the following non-exertional limitations: [Sanchez] can perform simple repetitive tasks. [Sanchez] can occasionally interact with the [sic] coworkers and the public." Tr. 48, 51–52. At step four, the ALJ concluded that Sanchez was unable to perform any past relevant work. Tr. 51. However, at step five, and based on the hypotheticals posed to the VE, the ALJ concluded that the type of work that Sanchez can perform exists in significant numbers in the national economy. Tr. 52. On June 28, 2018, the Appeals Council denied Sanchez's request for review. Tr. 1–8.

*Sanchez's Psychiatric History*

Dr. David A. Flores Santana ("Dr. Flores") was Sanchez's treating psychiatrist from February 2012 to March 2016. Tr. 108–24, 127–142. Dr. Flores's initial evaluation indicated that Sanchez's thought processes were coherent, logical and relevant. Tr. 124. Dr. Flores found that Sanchez was oriented in time, place, and person and that Sanchez's

behavior was cooperative. *Id.* Dr. Flores additionally noted that Sanchez denied suicidal and homicidal thoughts. *Id.* However, Dr. Flores also recorded that Sanchez "sometimes" experienced auditory and visual hallucinations, that his appearance was disheveled, and that he had concentration problems and diminished attention. *Id.*

Between February 2012 and March 2014, Sanchez visited Dr. Flores seventeen times. Tr. 108–24. The progress notes are generally consistent with the first visit. Dr. Flores describes Sanchez's thought processes as coherent, logical, and relevant on every occasion except one, where Sanchez is reported as having thought blockages. Tr. 112 (June 12, 2013). Dr. Flores describes Sanchez as oriented in time, place and person, except on one occasion. Tr. 113 (May 21, 2013, showing not oriented in place). Sanchez's behavior is also consistently recorded as "cooperative" on all but four occasions. Tr. 116 ("poor attention" and "poor visual contact"); Tr. 114 ("poor attention"); Tr. 113 ("cooperative" but with an emphasis on "poor visual contact"); Tr. 112 ("cooperative" but "poor visual contact"). Dr. Flores reported that Sanchez denied suicidal and homicidal ideas on every occasion, except that on June 19, 2019 where the record is obliterated as to homicidal ideas but shows that Sanchez denied suicidal ideas. Tr. 112. On four occasions, though, Dr. Flores found that Sanchez had thoughts about the dead. Tr. 115–17, Tr. 119. As for hallucinations, Dr. Flores marked that Sanchez reported having hallucinations except on five visits. Tr. 123 (Mar. 26, 2012), Tr. 120 (June 25, 2012), Tr. 111 (Aug. 14 2013), Tr. 109 (Jan. 13, 2014), Tr. 108 (Mar. 31, 2014). Throughout this period, Dr. Flores concluded that Sanchez's Global Assessment Functioning ("GAF") score[2] was 50 for the first thirteen visits (Tr. 112–24), rose to 60 for the next three (Tr. 111–09), and was 55 for his final visit. Tr. 108.

---

[2] GAF is a scale from 0 to 100 used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults. A GAF score ranging from 41 to 50 indicates "serious symptoms" or any "serious impairment in social occupational, or school functioning." A GAF score between 51 and 60 indicates "moderate symptoms" or "moderate difficulty in social occupational, or school functioning." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (DSM–IV–TR).

In his diagnostic report, Dr. Flores categorized Sanchez with the code "296.34" but did not define the code or explain what it means. *See* Tr. 116 ("Diagnostic Impression"). The ALJ pointed out that Dr. Flores diagnosed Sanchez with "severe recurrent major depressive disorder with psychotic features" four times: "Ex. B4F at 1, 9, 11, and 14." Tr. 49; *See* Tr. 108, 116, 118, 121. The only consistent code in the diagnostic reports for these visits is "296.34," and, in fact, it is the only code mentioned for the last instance. *See* Tr. 121. Careful reading of the ALJ's report indicates that she defined "296.34" as "severe recurrent major depressive disorder with psychotic features." While the ALJ only mentions four instances of this code occurring, it actually occurs in eleven of the seventeen visits between February 2012 and March 2014. Tr. 108, 110–18, 121. The diagnosis also occurs in every one of Sanchez's last seven visits with Dr. Flores, which occurred between March 2014 and March 2016. Tr. 127–30, 133–34, 138.

On January 17, 2014, at the request of the Disability Determination Services, Dr. Luis E. Saliceti-Rivera ("Dr. Saliceti") completed a one-time consultative exam on Sanchez. Tr. 99–107. Dr. Saliceti found that Sanchez was unkempt with "muddy black shoes," "long nails," and a messy beard. Tr. 102. Further, Dr. Saliceti noted that Sanchez did not make eye contact and had a blunted facial expression. *Id.* Contrary to Dr. Flores's accounts, Dr. Saliceti noted that Sanchez "demonstrated an uncooperative attitude," yet agreed with Dr. Flores that Sanchez was "logical and coherent at all times." *Id.* Dr. Saliceti also reported that Sanchez did not display any "perception difficulties," yet he found Sanchez as oriented "to person, but not to time or space." *Id.* Consistent with Sanchez's testimony about his lack of education, the tests conducted by Dr. Saliceti showed that Sanchez did not know how to add or subtract numbers or spell words. Tr. 103. Dr. Saliceti concluded that Sanchez was unable to handle his own funds. *Id.* Finally, Dr. Saliceti stated that "based on the information provided by the claimant, his clinical history and our observations, we considered his prognosis as reserved." Tr. 106. It is unclear what this

means, and the ALJ accorded the prognosis little weight because it was "vague and not an opinion indicative of actual abilities." Tr. 50.

On February 18, 2014, a non-examining state agency psychological consultant, Dr. Wanda Machado ("Dr. Machado"), reviewed the evidence. Tr. 143–53. Dr. Machado made no mention of perceptual disturbances, even though she characterized Dr. Flores's diagnostic as "major depressive recurrent severe – stable with ps tx." *Id.* The court interprets "ps tx" to reflect Dr. Flores's account: "psychotic features." Dr. Machado concluded that Sanchez suffers from a medically determinable impairment that does not precisely satisfy the diagnostic criteria in the regulations. *See* Tr. 147. Dr. Machado also concluded that Sanchez experiences moderate restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and has had no episodes of decompensation. Tr. 147. In assessing Sanchez's RFC, Dr. Machado determined that Sanchez's "condition is not overwhelming of his mental abilities." Tr. 151. Specifically, Dr. Machado concluded that Sanchez was still able to "understand, retain, and comprehend basic work related directives of two to three steps." *Id.* Dr. Machado further found that Sanchez retained enough "concentration to endure the course of a normal work day" and the "necessary capacity to interact with coworkers and supervisors." *Id*. Finally, Dr. Machado noted that Sanchez would be able to adapt to "minor work changes" and "hazards" and "implement work goals independently." *Id.*

Another non-examining state agency psychological consultant, Dr. Carlos Jusino-Berrios ("Dr. Jusino"), evaluated Sanchez's records on May 6, 2014. Tr. 155–66. Dr. Jusino had more of Dr. Flores's record to review: an extra visit on March 31, 2014. Based on the record, Dr. Jusino concluded that Sanchez had "no hallucinations." Tr. 157. Dr. Jusino's report, besides the mention of hallucinations, is substantially identical to that of Dr. Machado. Dr. Jusino concluded that Sanchez suffers from a medically determinable impairment that does not precisely satisfy the diagnostic criteria in the regulations. *See* Tr.

161. Dr. Jusino also concluded that Sanchez experienced moderate restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and has had no episodes of decompensation. *Id.* In assessing Sanchez's RFC, Dr. Jusino determined, like Dr. Machado, that Sanchez's "condition is not overwhelming of his mental abilities." Tr. 164. Specifically, Dr. Jusino concluded that Sanchez was still able to "understand, retain, and comprehend basic work related directives of two to three steps." *Id.* Dr. Jusino further found that Sanchez retained enough "concentration to endure the course of a normal work day" and the "necessary capacity to interact with coworkers and supervisors." *Id*. Finally, Dr. Jusino noted that Sanchez would be able to adapt to "minor work changes" and "hazards" and "implement work goals independently." *Id.*

Dr. Flores saw Sanchez seven more times from March 2014 until March 2016. Tr. 127–142. As previously mentioned, Dr. Flores diagnosed "severe recurrent major depressive disorder with psychotic features" in every one of these seven visits. Tr. 127–30, 133–34, 138. However, it is unclear whether or not Sanchez consistently reported hallucinations. Hallucinations are denied on two occasions (Tr. 127–28), reported on three occasions (Tr. 131, 135, 140 showing "positive" for "AH and VH" under "thought content") and the record is silent on another three. Tr. 129–30, 134 (showing "obliterated"). Dr. Flores's progress notes for this period are generally consistent with the first seventeen visits. On every occasion Sanchez's thought processes were coherent, logical, and relevant. Tr. 127–130, 134. The progress notes during this period show that Sanchez was oriented in time, place, and person except once. Tr. 130 (February 2, 2015). Dr. Flores reported that Sanchez was cooperative except on one occasion. Tr. 130 ("not very cooperative"). On every progress note, Dr. Flores marked that Sanchez denied suicidal or homicidal ideas. Tr. 127–130, 134. These following visits differ from the previous visits in two respects. First, the visits are less frequent, occurring every three to four months as opposed to almost every

month. *Id.* Second, the GAF scores from the five progress notes available vary more widely: 55 (Tr. 127), 60 (Tr. 128), 50 (Tr. 129), 60 (Tr. 130), 50 (Tr. 134).

## DISCUSSION

Sanchez argues that the ALJ erred, as a matter of law, in evaluating his mental condition. Specifically, Sanchez appears to allege that the ALJ's RFC determination was not supported by substantial evidence. He reaches this conclusion by setting forth two points. First, Sanchez claims that the ALJ erred in evaluating Dr. Flores. Second, Sanchez argues that the ALJ gave Drs. Machado and Jusino too much weight. I agree with Sanchez's first point. Ultimately, the ALJ's RFC determination was not based on substantial evidence.

Sanchez states that the ALJ failed to consider the "totality of [Dr. Flores's opinions]," except with reference to his GAF scores, which he argues were incorrectly evaluated. Dkt. 15 at 14. The Commissioner responds that Sanchez does not point specifically to any medical opinion the ALJ failed to weigh, and more generally, Dr. Flores's record contains no opinions that could be weighed. Dkt. 16 at 7. The Commissioner's argument is misguided. First, the ALJ correctly determined that Dr. Flores's GAF scores are medical opinions that may be weighed. Tr. 49; *See Morey v. Colvin*, Civil No. 14–433, 2015 WL 9855873, at *14 (D.R.I. Oct. 5, 2015) (quoting SSA Admin Message at 1 "'[w]e consider a GAF rating as opinion evidence' to be weighed by [the] ALJ"). Second, whether or not the rest of Dr. Flores's medical records constitutes a "medical opinion" is beside the point. Sanchez's main argument is the ALJ erred because she based her RFC on the incorrect conclusion that he did not have perceptual disturbances. Because there was not substantial evidence for this conclusion and because this evidence was relevant to Sanchez's RFC determination, remand is appropriate. *See Watkins v. Berryhill*, Civil No. 16–30117, 2017 WL 4365158, at *15 (D. Mass. Sept. 29, 2017).

The court's role is not to review the evidence *de novo* but to determine whether the ALJ's decision was based on substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A court "must uphold [the Commissioner's decision], even if the record arguably could justify a different conclusion." *Rodríguez Pagán*, 819 F.2d at 3. Here, the ALJ's conclusion that Sanchez lacked perceptual disturbances was not based on substantial evidence for three reasons: Sanchez's reported symptoms, the consistent diagnoses of severe major depressive disorder with psychotic symptoms, and the prescription of Risperdal, an anti-psychotic drug.

To begin, the ALJ's conclusion is undermined by the fact that Dr. Flores reported hallucinations on more than half of his visits with Sanchez. *Gonzalez v. Shalala*, No. 93–11640–Z, 1994 WL 129592, at *2–3 (D. Mass. Mar. 31, 1994) (finding that ALJ's conclusion that there was no evidence of claimant's hallucinations was incorrect because two psychiatrists reported these symptoms). The ALJ concluded that Sanchez's record "did not establish" that he suffered from perceptual disturbances, which is different than finding that there was no evidence of hallucinations. Tr. 49. It is unclear how the ALJ came to this conclusion, and the Commissioner does not address it. A claimant's own testimony, standing alone, does not provide substantial evidence for concluding that the claimant is disabled. *See* 20 C.F.R. § 404.1528(a). However, these are not Sanchez's statements standing alone because they were reported by Dr. Flores, though Dr. Flores only checked boxes to indicate that Sanchez suffered from perceptual disturbances, which is entitled to relatively little weight. *Watkins*, 2017 WL 4365158, at *4, 14. But this was not the only evidence that Sanchez suffered from perceptual disturbances.

The ALJ found that Sanchez was diagnosed with severe recurrent major depressive disorder with psychotic features on only four occasions. Tr. 49 ("(Ex. B4F at 1,9, 11, 14)"). As discussed in the Background section, these instances were not the only times Dr. Flores diagnosed Sanchez as such; he was diagnosed with this disorder every visit between March 2014 and March 2016 and eleven of the seventeen visits between February 2012 and March 2014. Tr. 127–30, 133–34, 138; Tr. 108, 110–18, 12. In her decision, the ALJ noted that Dr.

Flores's "diagnostic impression varied in the course of the treatment." Tr. 49. It appears that the ALJ reasoned that because Dr. Flores provided other, non-psychotic diagnoses, there was not enough evidence in the record to establish that Sanchez had perceptual disturbances. While Sanchez received other diagnoses from Dr. Flores, this does not change the fact that the majority of the time, he was diagnosed with severe major depressive disorder with psychotic features—a condition where one experiences hallucinations. *See Jones v. Berryhill*, No. 17-5494, 2018 WL 4905020, at *6 (N.D. Ill. Oct. 9, 2018). Given the consistent diagnoses of this disorder, a reasonable mind could not conclude that Dr. Flores's record did not establish Sanchez's perceptual disturbances.

Sanchez was also prescribed Risperdal, an anti-psychotic drug. *See Coulombe v. Colvin*, No. 14-491ML, 2016 WL 1068875, at *3 (D.R.I. Feb. 19, 2016) (noting that Risperdal is an anti-psychotic drug). Dr. Flores prescribed this medication on twenty of the twenty-four visits with Sanchez. Tr. 108–21, 128–29, 132, 134, 137, 142. On the remaining four occasions, there is no indication of any medication prescribed. Tr. 122–24, 130. Sanchez was prescribed Risperdal practically every time he saw Dr. Flores. Under a substantial evidence review, and absent any other explanation, a reasonable mind could not conclude that a psychiatrist would prescribe an anti-psychotic drug to a patient without perceptual disturbances.

Given Dr. Flores's reports of hallucinations, diagnoses, and prescription history, there was not substantial evidence for the ALJ's conclusion that the record did not establish perceptual disturbances. As mentioned, the ALJ did not give reasons for coming to her the conclusion, and her RFC determination stated that Sanchez was capable of "simple and repetitive tasks." Tr. 48. Some courts have found error when an ALJ's decision does not explain how a claimant would be capable of simple work given a claimant's hallucinations. *See, e.g.*, *Jones*, 2018 WL 4905020, at *6. If an ALJ's RFC is determined without explaining the treatment of relevant evidence, a court cannot conclude that it was based on substantial evidence. *Watkins*, 2017 WL 4365158, at *15. Therefore, the ALJ's decision

must be remanded to determine whether Sanchez had perceptual disturbances, provided with reasoning for that conclusion.

If the ALJ determines Sanchez had perceptual disturbances, Sanchez's RFC should be re-evaluated to determine if Sanchez was disabled at any time during the relevant time period. In particular, the ALJ weighed the GAF scores under the premise that Sanchez did not suffer from perceptual disturbances and subsequently accorded those scores little weight. Tr. 49 ("Nevertheless I give little weight to these scores I find that they have very limited evidentiary value when considering [Sanchez] did not manifest . . . perceptual disturbances . . . .").

Sanchez also argues that the ALJ failed by according great weight to the opinions of Drs. Machado and Jusino because they contain specific errors and were incomplete because they were performed before Sanchez's condition deteriorated. I need not address this argument at this time, since the ALJ must first take proper measure of Dr. Flores's findings related to perceptual disturbances, and incorporate those findings into the RFC.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **VACATED**, and the matter is **REMANDED** for further consideration of whether William Sanchez Rosa was disabled on or after October 22, 2013. Upon remand, the ALJ is free to consider any additional evidence she deems necessary to aid her task of determining whether the plaintiff is disabled. This ruling should not be considered by the parties as an opinion on the ultimate merits of plaintiff's disability claim upon remand.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of July, 2019.

*s/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge